## State Harness Racing Commission v. Hanshaw

*Rod J. Pera, J. Thomas Menaker* and *McNees, Wallace & Nurick,* for appellants.

*Herbert A. Fogel,* for appellee.

MENCER, J. (Commonwealth Court, Specially Presiding), August 18, 1970.—It has been aptly observed that a horse left standing at the starting gate seldom wins the race. A horse not allowed to enter a race, because it is declared ineligible to participate, must, of

certainty, not be the winner of the race. When this happened to a horse named Prime's Pride, it became perhaps a matter of principle, as well as pride, to challenge the ruling of inelgibility.

Prime's Pride, a horse owned by appellant Hanshaw and under lease to appellant Gooden, was nominated to the Pennsylvania Sire Stakes Race No. 1, held at Liberty Bell Park on September 9, 1969, under the auspices of the William Penn Racing Association. On September 5, 1969, the horse was declared ineligible by the race secretary on the basis of the horse's failure to meet the condition set forth as item no. 11 governing the race. The State steward affirmed, for the same reason, the decision of ineligibility rendered by the race secretary. As a consequence of these rulings, Prime's Pride lost her chance to demonstrate her speed, or lack of it, in this particular stake race and her owner and lessee lost their chances of watching their horse perform in the race and the possibility of sharing in the $18,965 purse. If Prime's Pride had participated and been one of the first five horses to cross the finish line of the race, appellants would have shared in the purse.

Pursuant to rule 23, sec. 5, of the Rules and Regulations of the Pennsylvania State Harness Racing Commission, an appeal was taken from the decision of ineligibility and a hearing held on October 17, 1969. On November 14, 1969, the said commission issued an order affirming the decision of the race secretary and the State steward. An appeal was filed from that order to this court in accordance with the Administrative Agency Law of June 4, 1945, P. L. 1388, as amended, 71 PS §1710.41, et seq.

The scope of our review is limited to the determination of whether there has been a manifest and flagrant abuse of discretion or a purely arbitrary execution of the administrative agency's duties or functions: Blu-

menschein v. Pittsburgh Housing Authority, 379 Pa. 566 (1954). Section 44 of the Administrative Agency Law requires the court to affirm the adjudication unless it was not in accordance with law or was an arbitrary, capricious or unreasonable determination due to the absence of substantial evidence to support the findings: 71 PS §1710.44; Pennsylvania Insurance Department v. Philadelphia, 196 Pa. Superior Ct. 221 (1961).

The printed conditions governing eligibility for the Pennsylvania Sire Stakes Race No. 1 set forth two items which are relevant to this appeal. (1) These events are subject to the rules and regulations of the Pennsylvania State Harness Racing Commission, and (2) all starters must have at least one satisfactory performance line. The rules and regulations do not define the term "satisfactory performance line." The testimony of appellant Hanshaw and the Executive Secretary of the Pennsylvania Harness Horsemen's Association established that the term "satisfactory performance line" was not a familiar or commonly understood term among horsemen.

Appellants, confronted with the conditions governing the race, submitted the 1969 Eligibility Certificate for Prime's Pride issued by the United States Trotting Association which contained an accurate chart line for a race in which their horse had run at Pocono Downs on May 27, 1969. The eligibility certificate indicated that Prime's Pride participated in 18 events following the May 27, 1969, race but none of these constituted accurate chart lines, although the horse did have satisfactory performances in several of these races.

The race secretary, confronted with the Eligibility Certificate for Prime's Pride and the conditions governing the race, decided that the horse was ineligible. His reasoning was determined at the hearing under question from appellants' counsel as follows:

"Q. The basis for the rejection of the declaration of Prime's Pride was Item 11, 'all starters must have at least one satisfactory performance line'? A. That's right . . . Q. To your knowledge, Sir, is there anywhere in the Rules where 'satisfactory performance line' is defined? A. Not as such in an entity by itself, no."

The Pennsylvania State Harness Commission, when considering on appeal the race secretary's decision as affirmed by the State steward, decided to affirm but not for the reason relied upon by the race secretary and State steward. The commission did not conclude that appellants had not complied with item 11 of the printed conditions governing the race, but rather found as part of its third finding of fact that "Prime's Pride had a 1969 Eligibility Certificate, which contained a satisfactory performance line and accurate chart line for a meeting at Pocono Downs on May 27, 1969." This finding was in complete fulfillment of item 11 of the conditions of the race and in complete refutation of the basis of the race secretary's ruling. For the commission to affirm the race secretary's ruling in the face of its own finding of fact to the contrary constituted a clear abuse of administrative discretion.

The commission affirmed on the rationale that the race secretary reached the correct conclusion for the wrong reason. The commission's reason for affirming was that the eligibility certificate of Prime's Pride did not provide sufficient information within the horse's last six performances to meet the program requirements of rule 7, sec. 2. This section deals with program information which must be available to the public. Rule 7, sec. 2(b), places responsibility on the association and/or program director for any failure to furnish reliable program information, and rule 6,

sec. 21(a), specifically provides that it shall be the responsibility of the program director to furnish the public complete and accurate past performance information as required by rule 7, sec. 2. The question could well be raised whether rule 7, sec. 2, is determinative of eligibility or merely an informative aid to the wagering public.

However, we shall assume that if sufficient information concerning a horse's past performance was not available to fulfill the requirements of rule 7, sec. 2, the horse would not be eligible to participate in the race. A contrary conclusion would be inconsistent with rule 7 in its entirety, which is clearly designed to provide reliable information of the horse's past performances to those who wish to wager.

What then is required by rule 7, sec. 2, that is pertinent to the present case? Rule 7, sec. 2(a)(8), provides that all programs shall furnish at least the last six performances and accurate chart lines. As a guide to interpret this requirement, reference is made to rule 14, sec. 4, subsection (d), which reads as follows:

"(d) When a horse has raced at a charted meeting during the current season and then goes to meetings where races are not charted, the information from the uncharted races may be summarized, including each start, and consolidated in favor of charted lines and the requirements of (b) would then not be applicable. The consolidated line shall carry date, place, time, driver, finish, track conditions and distance if race is not at one mile."

It then becomes clear that uncharted races contested in heats of more than one dash may be summarized and consolidated in favor of charted lines. Such a consolidation would not be equivalent in information to an accurate chart line as defined in rule 7, sec. 2(a)(8). This is further established by an examination of the

program entries for the race in question. The horse Conestoga Lassie was allowed to participate although the program entries for this horse showed three charted lines and four summarized and consolidated lines as provided by rule 14, sec. 4, subsec. (d).

This, then, leaves only the question of whether rule 7, sec. 2(a)(8), requires one charted line within the last six races, or whether a charted race can be shown along with summarized and consolidated lines as long as the eligibility certificate contains sufficient information to provide at least six lines for the program, even though more than six lines are needed in the program to set forth the information.

An examination of the program for the race in question discloses that seven lines are given for all horses entered, except for the horse Linessa Hanover, where six lines appear. This establishes that more than six lines can appear.

The rule, fairly read, only requires that at least six lines must be printed in the program and allows for summarized and consolidated lines. There is no provision that would have prevented 10 lines to be printed in the program in respect to Prime's Pride, and if such would have been done, Prime's Pride would have been considered eligible, since her charted line would have been printed. If the commission desires that the charted line be within the last six performances or the most recent seven lines, it should so provide by rule and not by arbitrary reasoning. To reason that a horse is ineligible even though it meets the minimum requirements of the rules and regulations but does not meet the program printer's limit of seven lines is an unreasonable determination.

Rule 9, sec. 22, provides that the race secretary may reject the declaration on any horse whose past performance indicates that he would be below the competitive level of other horses declared. Apparently, the

race secretary did not believe this rule should have been invoked against Prime's Pride.

We find the ruling of the race secretary as affirmed by the State steward and the commission, under the evidence in this case and the interpretation of the rules and regulations, to have been an arbitrary and unreasonable ruling. Since we believe that the race secretary and the commission were guided by practical considerations, we would hope that the rules and regulations would be amended to clarify what information must be provided as a condition of eligibility to participate in a stakes race.

Appellants also seek damages in this appeal based on a contention that rule 12, sec. 4, entitles the owner to the resultant loss of winnings where any horse is ineligible as a result of an error of the race secretary. A reading of the entire section suggests that this applies only where (1) a horse has participated in a race; (2) the owner obtained a purse by error and surrendered the same to be awarded to the party justly entitled to the same, and (3) thereafter it is determined that an error of the race secretary has resulted in the horse's ineligibility and surrender of the purse. In any event, we decline to pass upon this contention as not being within the scope of the appeal. See section 42, Administrative Agency Law, supra.

For the foregoing reasons, we enter the following

## ORDER

And now, August 18, 1970, the order of the State Harness Racing Commission affirming the order of the race secretary that Prime's Pride was ineligible to participate in the Pennsylvania Sire Stakes No. 1 held at Liberty Bell Park on September 9, 1969, under the auspices of the William Penn Racing Association, is hereby set aside.